UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MATTHEW MARK JORDAN, | : | |
| Petitioner, | : | Case Nos.  C-1-04-0613 |
| | | CR-1-02-156-2 |
| vs. | : | |
| UNITED STATES OF AMERICA | : | Senior Judge Spiegel |
| Respondent. | : | |

**REPLY MEMORANDUM OF PETITIONER, MATTHEW MARK JORDAN,
TO CORRECT OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Now comes Petitioner, Matthew Mark Jordan ("Mr. Jordan"), by and through counsel and, pursuant to Order of this Court, hereby submits his Reply Memorandum to the United States' Response to Petitioner's Motion to Correct or Vacate Sentence under 28 U.S.C. § 2255 in the above-captioned case.

Mr. Jordan raised four grounds for relief in his original Motion. Mr. Jordan reasserts those same grounds in this Reply Memorandum and hereby incorporates those original grounds by reference herein. Mr. Jordan supplements the argument regarding Ground One, the issue that his trial counsel was ineffective for operating under a conflict of interest by representing two codefendants in the same case. Mr. Ellis' potential conflict of interest may have prevented or limited Mr. Jordan's opportunities to earn a downward departure for substantial assistance.

**I. BACKGROUND SUMMARY**

On December 12, 2002, a Superceding Indictment was filed against Mr. Jordan, charging him in Count One of Conspiracy to Possess with Intent to Distribute

Methamphetamine in Excess of Five Grams, in violation of 21 U.S.C. § 846 and §841(a)(1) and (b)(1)(b). The same indictment charged a coconspirator, Karen Parker ("Ms. Parker"), with the same conspiracy charge as Mr. Jordan in Count One, as well as Controlling a Building for the Use of Making and Distributing Methamphetamine, in violation of 21 U.S.C. § 856(a)(2), in Count Two. On March 26, 2003, a hearing was held, pursuant to Federal Rule of Criminal Procedure 44(c) ("Rule 44 Hearing"), to determine whether the joint representation of codefendants Mr. Jordan and Ms. Parker by retained counsel Paris Ellis ("Mr. Ellis") created a potential conflict of interest.

During the Rule 44 Hearing, the Court inquired as to the intention of both Mr. Jordan and Ms. Parker to be represented by Mr. Ellis. Regarding Mr. Ellis, the Court had the following colloquy:

> **The Court**: Mr. Jordan, I would recount the questions that I did to Ms. Parker. The indictment that I read related to her, also relates to you in this same language. In fact, you're indicted together for the - - this methamphetamine operation. I think since it's a conspiracy case, again there may be - - during the course of the trial there may be - - may be reasons for your defense to be different than of that Ms. Parker's, which would be inconsistent with your defense, or to - - one to blame the other and so forth, and it would be difficult for your lawyer to be representing Ms. Parker and representing you at the same time and he might be put in a conflicted situation.
> You understand that?
>
> **Defendant Jordan:** Yes, sir.
>
> **The Court:** Under the law, you're entitled to, as I mentioned before, in the constitution, to be represented by counsel of your choice, or one will be assigned whose sole responsibility is to represent you and nobody else, and, obviously, not to have a conflict of interest in representing more than one

>   person in this case.
>   Do you understand that, too?
>
>   **Defendant Jordan:** Yes, sir.
>
>   **The Court:** Now is it your desire unequivocally and unambiguously, in language clear, to be represented by Mr. Ellis in spite of what I've outlined to you about the possible conflict of interest in representing both of you in a crime where conspiracy has been charged?
>
>   **Defendant Jordan:** Yes, sir.
>
>   **The Court:** And what is your choice?
>
>   **Defendant Jordan:** Choose Mr. Paris Ellis to be my - -
>
>   **The Court:** You want him to continue representing both of you?
>
>   **Defendant Jordan:** Yes, I do.

Transcript, Rule 44 Hearing, pp. 11-13.

On June 18, 2003, almost three months later, both Mr. Jordan and Ms. Parker entered guilty pleas to the Superceding Indictment. Both plea agreements provided for an opportunity to earn a reduction pursuant to United States Sentencing Guidelines (U.S.S.G.) § 5K1.1 or Federal Rule of Criminal Procedure 35(b) for substantial assistance.

At the sentencing hearing on November 13, 2003, no mention of a downward departure was made by either Mr. Ellis or counsel for the United States. Mr. Jordan, who had an adjusted offense level of 26 and criminal history category of I, was sentenced, among other things, to seventy (70) months in prison.[1]

---

[1] Mr. Jordan and Ms. Parker both had the same guideline calculations: (1) Base offense level 28; (2) a 3-point enhancement for substantial risk of life involving a minor; (3) a 2-point reduction for the safety valve; and, (4) a 3-point reduction for acceptance of

## II. ARGUMENT

Mr. Jordan asserts that his trial counsel was ineffective for operating under a conflict of interest by representing two codefendants in the same case. Mr. Ellis' potential conflict of interest may have prevented or limited Mr. Jordan's opportunities to earn a downward departure for substantial assistance. Mr. Jordan submits that further proceedings to correct or vacate Mr. Jordan's sentence are necessary because: (1) the record is deficient regarding Mr. Jordan's efforts to receive a substantial assistance downward departure; and (2) the Court did not protect Mr. Jordan's rights regarding the possibility of Mr. Jordan receiving a lesser sentence by agreeing to cooperate with the government against the other.

The test for whether an attorney has provided ineffective assistance was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). The Strickland test has been interpreted and modified to fit the plea context as explained by the Sixth Circuit in Thomas v. Foltz, 818 F.2d 476, 480 (6th Cir. 1987):

> The starting point for analyzing a claim of ineffective assistance of counsel is the two-pronged standard set forth in Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Under that standard, a criminal defendant must show both that his counsel's performance was deficient and that it prejudiced his defense in a manner which deprived him of a fair trial. Meeks v. Bergen, 749 F.2d 322, 327 (6th Cir. 1984). This standard is adjusted, however, when dealing with a situation where a defendant enters a guilty plea instead of being found guilty after a trial. In the context of guilty pleas, the first element, the "performance" aspect, of the Strickland test remains the same but the second element, the "prejudice" requirement, changes. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

---

responsibility. With adjusted offense levels of 26 and criminal history categories of I, their guideline ranges were 63 to 78 months. Ms. Parker received sixty-three (63) months in prison (Counts One and Two to run concurrently).

on going to trial." Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

The instant case involves a specific type of ineffectiveness claim, that of conflict of interest, which is also examined under a slightly different standard from that used in a traditional ineffectiveness claim. The Supreme Court set forth the standard for determining conflict of interest cases in Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333,(1980), and summarized it again in Strickland as follows:

> In Cuyler . . . [we] held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts . . . it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims mentioned above [actual or constructive denial of the assistance of counsel altogether]. *Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance*."

Strickland, 466 U.S. at 692, 104 S. Ct. at 2067 (emphasis added) (quoting Cuyler, 446 U.S. at 345-50, 100 S. Ct. at 1716-19). This Circuit has interpreted the Cuyler test as directing courts "to determine, on the facts of each case, whether there is an actual conflict of interest and whether that conflict has caused ineffective performance in violation of the provisions of the Sixth Amendment. . . ." Smith v. Bordenkircher, 671 F.2d 986, 987 (6th Cir.), cert. denied, 459 U.S. 848, 103 S. Ct. 107, 74 L. Ed. 2d 96 (1982).

Just as the Strickland standard has to be adapted to the guilty plea context, so must the Cuyler standard be adapted. The primary question in the guilty plea context is whether the plea was a "voluntary and intelligent choice" made by the defendant. North Carolina v. Alford, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). Thus, in order to successfully assert a claim of ineffective counsel based on a conflict of interest, a defendant who entered a guilty plea must establish: (1) that there was an actual conflict of interest, Smith, 671 F.2d at 987; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by the defendant.n3 These are the two questions which face this court.

    n3 It bears repeating that this second element carries with it

5

> a level of presumed prejudice and does not require a showing
> of prejudice as required under Strickland; it imposes the lesser
> burden of having to prove some adverse impact.

Therefore, Mr. Jordan must show that his trial counsel was ineffective by showing that there was an actual conflict that had some adverse impact, which, in this situation, was the compromised opportunity to earn a downward departure for substantial assistance.

In the recent case U. S. v. Osborne, No. 02-6526, 2005 U.S. App. Lexis 602 (6th Cir. January 13, 2005)(attached as Exhibit 1), the Sixth Circuit faced a situation where it determined that the Rule 44 Hearing held by the district court was inadequate:

> The Rule 44(c) hearing conducted in this case failed to comport with the Rule's requirements in several respects. First, the Osbornes were never informed of the particular types of conflict of interest which might arise from joint representation in their case. The waiver document executed by Mrs. Osborne merely stated that she agreed to "waive any conflict which may exist." J.A. at 38. The waiver document did not inform Mrs. Osborne of the types of potential hazards which joint representation could create. Similarly, the magistrate judge failed to explain the risk that Thornton's representation of both spouses might present. The only explanation provided by the magistrate judge was that there may be "a conflict of interest with respect to your various defenses." J.A. at 81B. At no time did the magistrate judge inform Mrs. Osborne that joint representation could limit her ability to obtain a favorable plea agreement or result in a lengthier sentence. Mrs. Osborne was provided inadequate information as to the nature of the right she was purportedly waiving and the potential consequences of that waiver.

Osborne, at 5, 2005 U.S. App. Lexis 602 ,*4.

In Osborne, the Sixth Circuit was concerned that the defendant did not knowingly and intelligently waive her right. Additionally, the Sixth Circuit opined that the district court erred because it "had an ongoing obligation to monitor and address potential conflicts as they arose. Osborne, at 6, 2005 U.S. App. Lexis 602 ,*5. However, the Sixth Circuit determined

that it did not have sufficient evidence from the record to conclude that an actual conflict had arisen. The Sixth Circuit vacated and remanded the sentence:

> The district court failed to conduct a proper Rule 44(c) hearing after the court had reason to believe that a conflict of interest might have developed. Yet, the record is insufficient to allow us to determine whether an actual conflict of interest occurred as a result of Thornton's joint representation of the Osbornes. The proper remedy therefore is not to reverse Mrs. Osborne's conviction but rather to remand the case to district court so that an "after the fact" Rule 44(c)hearing may be conducted.
> "By remanding the case, we do not mean to dictate the result to be reached by the district court" after a hearing is held. [U.S. v. Gilliam, 975 F.2d 1050, 1054(4th Cir. 1992).] We leave it to the district court to determine following the hearing whether an actual conflict existed and whether such a conflict of interest affected the knowing and voluntary nature of Mrs. Osborne's guilty plea.

Osborne, at 8, 2005 U.S. App. Lexis 602 ,*6-7.

In the present case, Mr. Jordan's Rule 44 Hearing was held on March 26, 2003, three months before he plead guilty at his Change of Plea Hearing on June 18, 2003. In the Rule 44 Hearing, the Court only informed Mr. Jordan about potential conflicts of joint representation in the context of a trial, informing him about inconsistent defenses and placing blame on the codefendant, and the like. Although the Rule 44 Hearing informed Mr. Jordan as to his rights in the trial context, the Rule 44 Hearing was deficient as to informing Mr. Jordan of the risks of using the same trial counsel for plea negotiations. For instance, the two codefendants should be informed that one could chose to cooperate with the government against the other. It is clear from the Rule 44 Hearing that plea negotiations were not discussed, although it is clear from the plea agreement and the Change of Plea Hearing, that

downward departures based on substantial assistance were contemplated. The record is unclear, however, as to what became of these negotiations. At the sentencing hearing on November 13, 2003, no mention of a downward departure was made by either Mr. Ellis or counsel for the United States. Although the Rule 44 Hearing was in March 2003, the Court had an ongoing obligation to protect Mr. Jordan's right during the Change of Plea Hearing in June 2003 and the Sentencing Hearing in November 2003.

The original petition raises some questions as to lack of meetings for providing the government with substantial assistance [Petition, Ground (1)(a) and Ground (3)], and considerations given to Mr. Jordan's step-son, Carlos Whitaker, who was charged with conspiracy in the original indictment [Petition, Ground (2)(a)]. Considering that Mr. Jordan did not have a direct appeal [Petition, Ground(4)], it is necessary to have an evidentiary hearing to show that, but for the ineffective assistance of counsel due to the joint representation of the codefendants, Mr. Jordan would have received a lesser sentence by earning a downward departure for substantial assistance.

## III. CONCLUSION

Mr. Jordan's trial counsel was ineffective for operating under a conflict of interest by representing two codefendants that may have prevented Mr. Jordan an opportunity to earn a downward departure for substantial assistance. Mr. Jordan was severely prejudiced by counsel's error because had such issues been explained prior to his plea, he may have received a lesser sentence. Accordingly, Mr. Jordan submits that this Court should hold an evidentiary hearing to show that trial counsel had an actual conflict of representation and hold further proceedings to correct or vacate Mr. Jordan's sentence pursuant to <u>Osborne</u>.

Such proceedings are necessary because: (1) the record is deficient regarding Mr. Jordan's efforts to receive a substantial assistance downward departure; and (2) the Court did not protect Mr. Jordan's rights regarding the possibility of Mr. Jordan receiving a lesser sentence by agreeing to cooperate with the government against the other codefendant.

        Respectfully submitted,

        STEVEN R. KELLER,
        FEDERAL PUBLIC DEFENDER

        *s/ C. Ransom Hudson*
        C. Ransom Hudson (0061332)
        Assistant Federal Public Defender
        2000 URS Center
        36 East Seventh Street
        Cincinnati, Ohio 45202
        (513) 929-4834

        Attorney for Petitioner
        Matthew Mark Jordan

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March 2005, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following: Kenneth L. Parker, Assistant United States Attorney.

        *s/ C. Ransom Hudson*
        C. Ransom Hudson